UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

JUSTIN DAVIS ENTERPRISES, INC.,

    Debtor.
_____/

Chapter 11

Case No. 8:15-bk-7698-MGW

## DEBTOR'S CHAPTER 11 CASE MANAGEMENT SUMMARY

JUSTIN DAVIS ENTERPRISES, INC. (the "**Debtor**"), by and through its undersigned attorneys, pursuant to Local Rule 2081-1, hereby files this Chapter 11 Case Management Summary (the "**Summary**"). For its Summary, the Debtor states the following:

### Introduction

On July 28, 2015 (the "**Petition Date**"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

### Case Management Items

**I.    Description of the Debtor's Businesses**

The Debtor is a tank transport services provider primarily delivering petroleum products from terminals to retail and commercial sites. The Debtor provides dedicated transportation services throughout the Southeast, including operating primarily in the tankline truckload sector. The Debtor primarily services the petroleum and related fuel industry, making daily deliveries from petroleum terminal facilities to retail and commercial sites. The Debtor is also a primary provider of fuel delivery services to major power companies in the region during emergency relief efforts, including following hurricanes.

## II. Location of Debtor's Operations and Whether Leased or Owned

The Debtor maintains a number of separate business locations. At any one time, depending on delivery schedules, a majority of the Debtor's vehicles are located at its Tampa office, located at 3810 S. 50th Street, Tampa, Florida. The Tampa office location is leased from 50th Street Tampa JDBIV, LLC. The Debtor also maintains an office at 378 E. Base Street, Suite 216, Madison, Florida, which is also the Debtor's mailing address. The Madison location is leased from JBDIV, LLC, an affiliate of the Debtor.

## III. Reasons for Filing Chapter 11

The Debtor has been in operations since 1998. The Debtor has a sound and reliable customer base, and is an essential part in the fuel supply chain in the areas in which it operates.

In May, 2008, the Debtor filed with this Court a Chapter 11, Case No. 8:08-bk-6468-MGW (the "**2008 Bankruptcy Case**"). The Debtor had experienced cash flow issues related to overleverage of secured debt and overhead and rising fuel costs, ultimately necessitating a need for reorganization. In the 2008 Bankruptcy Case, the Debtor filed a plan, which the Court confirmed on January 14, 2009 (2008 Bankr. Case Doc. No. 276). The 2008 Plan provided for the restructuring of secured debt on the Debtor's cash collateral and rolling stock, payment over time of secured and priority IRS claims, a distribution to unsecured creditors paid in five annual installments, and retention of equity.

Also during the 2008 Bankruptcy Case, in connection with post-confirmation matter the Debtor entered into a factoring arrangement with LSQ Funding Group, LC ("**LSQ Funding**"). The financing provided by LSQ Funding allowed the then-reorganized company to satisfy certain post-petition and post-confirmation expenses, including payments to Wells Fargo Bank, N.A. ("**Wells Fargo**") and the Internal Revenue Service (the "**IRS**"). The factoring arrangement

included a subordination to LSQ of claims and liens on accounts receivable and similar collateral by Wells Fargo and the IRS.

The Debtor continued its operations successfully, although not without struggles, since the 2012 closure of the 2008 Bankruptcy Case. However, the combination of increased operating expenses and cash flow issues created by continuing entanglements between the IRS and LSQ, again have caused cash flow problems, and the Debtor was unable to adjust operating expenses to remain in line with revenues, or to execute on a capital exit, outside of a bankruptcy filing. The Debtor filed this case to maintain the going-concern value of its assets and business operations, likely through a sale of substantially all its assets on a quick timeline, or through a plan if necessary.

**IV. List of Officers and Directors and Salaries and Benefits at Time of Filing and During the One Year Prior to Filing**

Justin Davis is the President, sole officer, and sole shareholder of the Debtor. In the year prior to filing, Mr. Davis received compensation based on an annual salary in the amount of $120,000.00, as cash flow has permitted.

**V. Debtor's Annual Gross Revenues**

The Debtor's gross revenues for 2014 calendar year were approximately $14,000,000. Gross revenues for YTD 2015 are approximately $5,650,000.

**VI. Amounts Owed to Various Classes of Creditors**

**Secured Claims:**

As discussed above, the Debtor is a party to a factoring arrangement with LSQ Funding. Well before the filing of the 2008 Bankruptcy Case, the Debtor was indebted to Wells Fargo, as successor to Wachovia Bank, under a line of credit facility, in the original amount of $750,000 (the "**Wells Fargo Obligations**"). Upon information and belief, presently Wells Fargo asserts a

claim in the approximate amount of $230,000, based on payments made following the 2008 Bankruptcy Case.

Wells Fargo filed a UCC-1 Financing Statement asserting a security interest in the following collateral: all accounts, chattel paper, instruments, and general intangibles. The Wells Fargo liens have been subordinated to the liens of LSQ Funding.

The Debtor has also obtained financing from a number of other lenders (the "**Vehicle Lenders**"), some of whom have filed UCC-1 Financing Statements, secured by various specific items of equipment or specific vehicles (generally either trucks or trailers). These financing statements appear to be limited to asserting security interests in particular pieces of equipment. The Debtor believes the Vehicle Lenders assert claims of approximately $2 million. The Vehicle Lenders also include creditors – totaling $2.8 million – who might assert that their interests are as lessors, not secured creditors; the Debtor has not undertaken an analysis of these claims, and reserves all rights with respect thereto.

Additionally, the Debtor borrowed funds – totaling approximately $340,000 – under certain arrangements with lenders who might assert liens on accounts receivable. The Debtor believes these interests are unsecured based on the senior liens on the collateral.

**Priority Claims:**

The Debtor owes certain amounts for 941 taxes for the 4th quarter of 2014 and the first two quarters of 2015, estimated to be in the approximate amount of $300,000 per quarter.

**Unsecured Claims:**

The Debtor owes certain amounts to trade creditors totaling approximately $685,000.

**VII.    General Description and Approximate Value of the Debtor's Current and Fixed Assets**

The Debtor's assets consist primarily of equipment, including vehicles, and accounts receivable. The net book value of the Debtor's vehicles and equipment is approximately $4.2 million. The Debtor has accounts receivable of approximately $590,000, against which LSQ Funding has advanced approximately $450,000.

**VIII.    Number of Employees and Amount of Wages Owed as of Petition Date**

The Debtor currently employs approximately one hundred (100) trained and skilled people in its business operations both as salaried office employees and as drivers. These employees are critical to the operation of the Debtor's business and its going concern value. The Debtor would not be able to replace these employees without a major significant disruption in its business.

The total amounts for the Debtor's payroll, paid weekly two weeks in arrears, varies depending on the commission amounts earned by the Debtor's fleet operators. The average gross payroll amount is approximately $60,000 per week. The most recent prepetition obligations for employee compensation are for employee services during the weekly payroll periods ending on July 17, July 24, and July 31, 2015 and August 7, respectively, as well as uncashed checks for previous payroll periods.

**IX.    Status of Debtor's Payroll and Sales Tax Obligations**

As stated above, the Debtor owes payroll taxes for the last quarter 2014 and the first three quarters of 2015, totaling approximately $900,000.00. The Debtor is current in all other tax obligations.

**X.      Anticipated Emergency Relief Within 14 Days of Petition Date**

The Debtor anticipates filing the following motions requesting emergency relief within 14 days of the Petition Date:

1.      Motion to pay pre-petition wages; and

2.      Motion to Approve Sale of Post-Petition Receivable to LSQ Funding.

**XI.     Strategic Objectives**

The Debtor intents to maximize the going-concern value of its assets, whether by a sale or through a plan.

WHEREFORE, the Debtor respectfully submits this as its Case Management Summary.

        /s/ Daniel R. Fogarty
Daniel R. Fogarty (FBN 0017532)
Stichter, Riedel, Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
dfogarty@srbp.com
(813) 229-0144 – Phone
(813) 229-1811 – Fax
Attorneys For Debtor

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing *Debtor's Chapter 11 Case Management Summary* has been furnished on this 29th day of July, 2015, by the Court's CM/ECF system to the Office of the United States Trustee.

        */s/ Daniel R. Fogarty*
Daniel R. Fogarty